A02A0728. AUTOMATED SOLUTIONS ENTERPRISES, INC. v. CLEARVIEW SOFTWARE, INC. et al.
(567 SE2d 335)

MILLER, Judge.

Automated Solutions Enterprises, Inc. ("ASE") appeals from the grant of summary judgment against it. ASE contends that (1) the defendants' failure to refile their motion for summary judgment after ASE amended its complaint requires the reversal of summary judgment as to the new matters set forth in the amended complaint and (2) there are genuine issues of material fact as to whether (a) the

defendants breached fiduciary duties arising out of a claimed confidential relationship with ASE, (b) one of the corporate defendants breached agreements between it and ASE, (c) the defendants intentionally interfered with ASE's relationship with one of its employees, and (d) the individual defendant should be held liable regardless of the liability of the corporate defendants. Discerning no error, we affirm.

Construing the evidence in the light most favorable to ASE (*Contractors' Bldg. Supply v. Gwinnett Sash & Door*, 199 Ga. App. 38, 40 (2) (403 SE2d 844) (1991)), the record reveals that ASE's business relationship with TLB, Inc., of which Solomon Software was a division, began in 1989 with a Consulting Agreement. This was followed in 1993 by a Reseller License Agreement between ASE and TLB (including Solomon) and in 1998 by an Addendum to Reseller License Agreement between ASE and Solomon. From 1993 to 1999, Solomon was the only company for which ASE sold and serviced products; during that period, 98 percent of ASE's revenues was derived from the sale or service of Solomon products.

As of February 1999, Jeff Besch had worked at ASE for six and one-half years as a developer of software. He had told a co-worker that he was unhappy there. On February 17 or 18, 1999, Besch was talking casually with James Stritzinger, an officer of both Solomon and a related corporation, at a business reception and told him he was planning to leave ASE.

Stritzinger responded that if Besch were looking for new employment, there might be an opportunity at STC, a wholly owned subsidiary of Solomon. On March 6, 1999, Besch called Stritzinger to tell him the terms of an employment offer from a party unrelated to this litigation, and Stritzinger indicated that he thought he could better that offer. A week later, Besch and Stritzinger agreed on Besch's leaving his employment with ASE and becoming employed by STC.

Stritzinger also wanted to negotiate a merger of ASE into STC or to hire some of ASE's other employees. Stritzinger accordingly asked Besch "to express [to Ron Sicard, ASE's president,] his dissatisfaction with ASE in as pointed a terms [sic] as he could without coming to the point of saying I resign." Stritzinger explained:

A: In other words, for the strategy to play out the right way, I wanted [Sicard] to be extra motivated [to have the] discussion with me. . . .
Q: So . . . you were hoping that Jeff Besch could be utilized to help, somehow heighten or foster interest in Ron Sicard to . . . look at this merger [of ASE into STC] favorably?
A: Correct.

* * *

Q: . . . [Y]ou could have used Jeff to help at least raise the interest or raise the anxiety with the prospect of him leaving?
A: I absolutely wanted [Sicard] to meet with me and to be interested in having a discussion, yes.

Additionally, Besch deposed that Stritzinger suggested not setting a firm date for Besch's termination with ASE, partially because of the possibility of Sicard and some of his staff becoming employed by STC. Thus, the evidence indicates that Stritzinger enlisted Besch temporarily to conceal from Sicard, while still working at ASE, the news that Besch would be leaving ASE so that Sicard would be motivated to discuss a merger of ASE into STC or to become employed by STC along with some of his staff. No merger or hiring of any other employees occurred, however.

In October 1999, Stritzinger sent a letter to ASE that purported to terminate the Consulting and Reseller Agreements. ASE protested the terminations.

ASE sued Stritzinger, STC, and Solomon originally for breach of certain policies, breach of the Reseller Agreement, and tortious interference with Besch's employment contract. After defendants moved for summary judgment on all counts, ASE amended its complaint to drop the "breach of certain policies" claim and added a claim for breach of the Consulting Agreement and a claim for breach of fiduciary duty arising out of an alleged confidential relationship between Solomon and ASE. The court entered summary judgment in defendants' favor on all counts of the amended complaint.

1. ASE first claims error in granting summary judgment on the two new counts found in the amended complaint — which was filed after defendants moved for summary judgment — in that defendants did not refile their motion to deal with the two new counts. It further notes that defendants did not file a new motion for summary judgment 30 days prior to the grant of the motion.[1] ASE concedes, however, that defendants "did attempt to discuss the new counts [of the complaint] in their reply brief" filed prior to the hearing on the motion.

ASE relies on *Paino v. Connell*, 207 Ga. App. 553-554 (3) (428 SE2d 446) (1993), where the day before the hearing on the defendants' motion for summary judgment the plaintiff amended his complaint to add four counts. We reversed the grant of summary judg-

---

[1] Where a hearing is held, OCGA § 9-11-56 (c) requires motions for summary judgment to be served at least 30 days before the hearing.

ment on the additional counts, holding that "the trial court committed procedural error by granting summary judgment as to appellant's amended complaint. No motion for summary judgment as to the four additional claims . . . had been made 30 days prior to the trial court's grant of summary judgment." (Citation omitted.) Id. at 554 (3).

In *Paino*, however, the question of the effect of the amendment was addressed at the hearing on the motion for summary judgment. Id. Here, on the other hand, not only did ASE fail to raise — either during the hearing or in its post-hearing brief — any concern that defendants had not refiled their motion to deal with the amendment, it affirmatively argued the two new counts introduced by the amendment, both orally and in its post-hearing brief. Accordingly, by arguing the new matters as before the court as a proper subject of the motion for summary judgment, it waived any argument on appeal that the matters were improperly considered by the court. "A party cannot complain of a result which he aided in causing. [Cits.]" *KDS Properties v. Sims*, 234 Ga. App. 395, 400 (4) (506 SE2d 903) (1998).

2. ASE next claims that there was a genuine issue of material fact as to its contention that there was a confidential relationship between ASE and Solomon. It contends this relationship gave rise to a fiduciary duty of Solomon to ASE that Solomon breached "by hiring Besch and by improperly terminating its support of [ASE]." It also contends that, because of this confidential relationship, Solomon's failure to disclose to ASE its hiring of Besch was fraudulent. We hold, however, that ASE's evidence as to the existence of the claimed confidential relationship was insufficient to create a jury issue on these claims. See *Hansen v. Cooper*, 253 Ga. App. 533, 535 (559 SE2d 740) (2002).

ASE relies on OCGA § 23-2-58, which provides:

> Any relationship shall be deemed confidential, whether arising from nature, created by law, or resulting from contracts, where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith, such as the relationship between partners, principal and agent, etc.

The evidence shows that the relationship between ASE and Solomon, close and lengthy as it might have been, was merely a business relationship between two independent concerns. As we stated in *Bogle v. Bragg*, 248 Ga. App. 632, 637-638 (1) (548 SE2d 396) (2001), "[t]he mere fact that one reposes trust and confidence in another does not create a confidential relationship. A confidential and fiduciary rela-

tionship must be shown by proof, and the burden is upon the party asserting the existence of such relationship to affirmatively show the same." (Punctuation and footnote omitted.) See *O'Neal v. Home Town Bank &c.*, 237 Ga. App. 325, 330 (5) (514 SE2d 669) (1999).

The Consulting Agreement provided that ASE was not TLB's representative or agent and vice versa and that "this Agreement does not establish a partnership or joint venture and [ASE] shall not refer to itself as the agent, dealer or distributor of TLB." The Reseller Agreement provided that ASE was an independent contractor and not an employee or agent. In *Allen v. Hub Cap Heaven*, 225 Ga. App. 533, 537 (4) (484 SE2d 259) (1997), we held that no confidential relationship existed where "[t]he franchise contract expressly provided for an independent contractor relationship between Hub Cap Heaven and its franchisees." Moreover, as in that case, here "the parties were engaged in a transaction with each other in an effort to further their own separate business objectives." (Citations, punctuation and emphasis omitted.) Id.

We thus hold that the trial court did not err in granting summary judgment against ASE on these claims.

3. (a) ASE contends that there was a genuine issue of material fact as to its claim that Solomon breached the Reseller Agreement. ASE first argues that the Addendum to the Reseller Agreement limited the rights of termination that Solomon had under the Reseller Agreement by providing that Solomon could terminate the Addendum if, among other things, ASE committed a material breach of the Addendum or the Reseller Agreement and failed to remedy the breach within 30 days after notice of it is given. Setting aside defendants' argument that ASE failed to make this argument below, the Addendum cannot reasonably be construed as ASE suggests, as it also provides that Solomon may immediately terminate the Addendum upon termination of the Reseller Agreement.

ASE argues that Solomon's termination letter failed to specify which agreement it was terminating in that it merely referred to "a certain Agreement executed between you and Solomon Software." The letter also states, "[i]f you think this termination is inaccurate and wish to continue as a Solomon Software Reseller or Consultant, please contact me. . . ." Accordingly, the letter was clearly intended to terminate both the Reseller Agreement and the Consulting Agreement. ASE's response does not dispute that intention.

ASE contends, finally, that it did not receive the 30 days notice of termination required by the Reseller Agreement, in that its account with Solomon was terminated on the twenty-ninth day following the date of the letter. That twenty-ninth day, however, was a Friday, and Sicard admits that there were no sales he could have made the following day. Accordingly, it appears that *no damages*

arose from defendants' failure to provide the full 30 days notice. See *Smith v. Geiger*, 217 Ga. App. 165, 168 (2) (456 SE2d 636) (1995) ("Even if notice outside the 30 days constituted a breach of the lease . . . , there is no suggestion of damage to the landlords by the later notice. . . .").

We thus hold that the trial court did not err in granting summary judgment against ASE on this claim.

(b) ASE claims that there was a genuine issue of material fact as to whether Solomon breached the Consulting Agreement by decertifying ASE without providing the 30 days notice of termination required by that agreement. This claim depends upon ASE's contention that "[n]o written notice of termination was ever provided to [ASE]." ASE's claim fails because, as held in Division 3 (a) above, the termination letter terminated the Consulting Agreement as well as the Reseller Agreement.

4. ASE next contends that there was a genuine issue of material fact as to its claim that defendants intentionally interfered with its relationship with Besch as its employee. In *American Bldgs. Co. v. Pascoe Bldg. Systems*, 260 Ga. 346, 348-349 (2) (392 SE2d 860) (1990), the Supreme Court of Georgia set out the permissible standards for a competitor's inducing an at-will employee to leave his existing employment and join the competitor:

> [T]here are limits to the kinds of inducement of at-will employees which may be permitted[, and we] have adopted the theory of privilege as set out in the Restatement, Torts, § 768. . . . The competitor's privilege is lost . . . when wrongful means in the solicitation of employees are utilized. Such wrongful means generally involve predatory tactics such as . . . fraud or misrepresentation. . . .

(Citations and punctuation omitted.)

ASE submitted no evidence to create a jury issue as to whether Stritzinger used such "wrongful means" in his solicitation of Besch. The only "wrongful means" asserted by ASE was Stritzinger's successful enlistment of Besch to conceal, for Stritzinger's admittedly self-interested motives in relation to the hoped-for merger or hiring of other employees, the news of Besch's having been hired away from ASE. Yet neither the merger nor the hiring of additional employees occurred. Since financial injury must result from the wrongful action, without damages the claim fails. See *Athens Intl. v. Venture Capital Properties*, 230 Ga. App. 286, 288 (2) (495 SE2d 900) (1998) (setting forth "financial injury" element of tortious interference claim); see also *Conner v. Hart*, 252 Ga. App. 92, 95 (1) (a) (555 SE2d 783) (2001) ("[E]ven if [defendant] did conceal some aspects of the sale from

[plaintiff, she] suffered no injury. . . . [T]he sale . . . never closed.").

5. Finally, ASE claims that there was a genuine issue of material fact as to its claim that, regardless of the liability of the corporate defendants, Stritzinger was individually liable in tort in connection with the hiring of Besch. ASE, however, has submitted no evidence sufficient to raise a jury issue that *any* of the defendants committed a tortious act. Thus, this claim also fails.

*Judgment affirmed. Blackburn, C. J., and Johnson, P. J., concur.*

DECIDED JUNE 18, 2002.

*Cauthorn & Associates, Thomas E. Cauthorn III, Melissa M. Nohr, Vanice H. Sikes, Jr.,* for appellant.

*Freeman, Mathis & Gary, T. Bart Gary, Stuart W. Gray,* for appellees.